The last oral argument this afternoon is O'Neill v. Edwards. Excuse me. Counsel? May it please the Court, Counsel, my name is Lawrence O'Neill from the Office of the State Appellate Defender, and I represent Marlon Edwards in this matter. Mr. Edwards was found guilty of aggravated battery with a firearm and aggravated discharge of a firearm following a jury trial involving a shooting here in Mount Vernon. I intend to argue Argument 1 from the original brief, which has three parts, and the related issue raised in the supplemental brief. All of these arguments involve claims of ineffective assistance of counsel for counsel's failure to object in four instances that denied Mr. Edwards a fair trial. In brief, the facts from the trial were that the defendant, Mr. Edwards, and his distant cousin, Tylone Edwards, had bad blood over a girl. Tylone testified that in August of 2010, he and his friend Theodore Jefferson went to a party in Mount Vernon. Mr. Edwards and Tylone got into an argument. Mr. Tylone left the party with Jefferson, and Tylone returned, and several people then gathered outside the party. Mr. Edwards and Tylone were poised for a fistfight, and someone handed a gun to Mr. Edwards. Tylone charged Mr. Edwards and tried to grab the gun from him. Mr. Edwards fell backwards and fired a shot, hitting Tylone in the groin area. Tylone was treated at the hospital but did not tell the police and medical personnel who shot him. Mr. Edwards testified that he denied that he shot Tylone and presented an alibi defense that he was with Desmond Eagleston at the home of Lexi Float at the time of the shooting. The first time counsel failed to object occurred during the testimony of Tylone Edwards, the complainant, and involved other crimes evidence. The context here is that Tylone did not come forward to identify Mr. Edwards as the shooter until two days after the shooting occurred. The prosecutor then asked Tylone on direct examination why he changed his mind and implicated Mr. Edwards. Tylone testified that two days after the shooting, he was at home about 3 a.m. with his girlfriend and young daughter when they shot up his house by firing 20 shots, hitting the house, sending wood flying, and busting up the walls. Now the they that Tylone referred to as the shooter included Mr. Edwards. There was no other way for the jury to interpret this testimony. However, it is improper to admit other crimes evidence unless there is sufficient evidence that the crime had occurred and the defendant committed the crime or participated in its commission. Here there was no evidence to show that Mr. Edwards was involved in the shooting. Tylone did not see who shot his house, and there was no evidence corroborating Tylone's claim that his house had been shot up that night. There was no report to the police that the shooting occurred that night, and it is just not believable that no one would report the firing of 20 shots in this residential area. Thus, there was a mere suspicion that the shooting occurred and that Mr. Edwards was involved, which is insufficient to admit supposed other crime evidence. If the state was able to present this evidence, it is that Mr. Edwards shot up the house where Tylone, his girlfriend, and young daughter were inside. By presenting this evidence, the state was able to portray Mr. Edwards to the jury as a violent person who had the propensity to commit violent crimes with firearms. Further, the incident implicated Mr. Edwards at the house shooting bolstered the state's claim that Mr. Edwards and Tylone had a feud and that Mr. Edwards had shot Tylone two nights earlier. In addition, the other crime's evidence indicated to the jury that Mr. Edwards was a bad person who deserved punishment, even though he may not have committed the crime for which he was on trial. Thus, there was no reason to not object to this testimony, and counsel was ineffective for not doing so. The next incident involved the proper admission of hearsay testimony. This occurred during the testimony of Tylone's friend, Theodore Jefferson, who was with Tylone earlier in the night. Jefferson testified without objection that shortly after the shooting, Tylone called him while Tylone was in a car on the way to the hospital. Jefferson asked Tylone who shot him. Jefferson then testified that Tylone stated to him that Mr. Edwards shot him. This is clearly an out-of-court hearsay statement offered to prove that Mr. Edwards was the shooter. Thus, Tylone's inadmissible hearsay evidence was presented as substantive evidence that Mr. Edwards shot Tylone. This also, counsel, was ineffective for failing to object to this prejudicial testimony. The next instance occurred during the testimony of Tylone Edwards, and it was with the issue raised in the supplemental brief. This issue involved Tylone's purported statement to Jefferson that he had been shot by Mr. Edwards. Here, however, the prosecutor elicited, improperly elicited, a prior consistent statement from Tylone. During Tylone's direct examination, after he testified that Mr. Edwards had shot him and explained that he called Jefferson while in the drive on the way to the hospital, the prosecutor asked Tylone if he had told Jefferson who shot him. Tylone then testified that he told Jefferson that Mr. Edwards had been the shooter. This was a prior consistent statement that was elicited by the prosecutor to improperly bolster Tylone's trial testimony that he had been shot by Mr. Edwards. Indeed, there was no other reason for the prosecutor to ask Tylone if he had told Jefferson that night that he had been shot by Mr. Edwards other than to bolster his trial testimony. There was no other reason to elicit that testimony. Again, this trial counsel failing to object to this is significantly prejudiced of Mr. Edwards. Finally, the prosecutor misstated the law regarding statements against penal interest in closing argument, which the prosecutor then used to bolster Tylone's trial testimony once again. During closing argument, the prosecutor was attempting to advance Tylone's credibility and told the jury that Tylone is credible because he exposed himself to criminal liability by testifying about his willingness to fight Mr. Edwards. The prosecutor then argued that Tylone should be believed because Tylone had given what is legally called a statement against penal interest. This is a misstatement of law. This is not a statement against penal interest. But the state agrees that it does not qualify as a statement against penal interest, which is a hearsay exception regarding self-incrimination. Rather, the state claims that the prosecutor's misstatement was harmless. However, the prejudice results from the fact that the prosecutor stands in a unique position in relation to the jury. And a jury may be more likely to believe the prosecutor because of the stature of his office and his role in the trial. The problem is that not only did the prosecutor vouch for Tylone's credibility, but also, in essence, told the jury that Tylone's testimony should be believed because the law recognizes that statements against penal interest are truthful. Thus, the harm to Mr. Edwards is that the prosecutor vouched for Tylone's credibility by misrepresenting the law in a way that informed the jury that the law recognizes Tylone's statement is true. In effect, the prosecutor validated Tylone's testimony by referring to a theory of law, a matter of law. This too, counsel failed to object to and amounted to ineffective representation. Now, it is the aggregate of these errors, Your Honor, that constitute ineffective assistance and deny Mr. Edwards a fair trial, which is understood as a verdict worthy of confidence. And in evaluating the aggregate errors, Your Honors, it is important to note that three of these four instances of counsel's failure to object involved attempts by the prosecutor to bolster Tylone's testimony. And Tylone's testimony was crucial to the state's case. There was no physical evidence tying Mr. Edwards to the shooting. Mr. Edwards presented an alibi defense. So Tylone's credibility was crucial. And in three instances, the elicitation of the prior consistent statement, the use of Jefferson's testimony to present to Tylone's hearsay statement, and the closing argument. All these were designed where all these errors enhanced the credibility of Tylone. And the case changed on Tylone's testimony. Therefore, Mr. Edwards was denied a fair trial by counsel's ineffective representation in this matter. Are there any questions, Your Honors? I don't believe so. Thank you. Thank you, counsel. Counsel? Good afternoon, Your Honors. May it please the Court. Mr. O'Neill. My name is Patrick Daly. I'm with the Office of the State's Attorney's Appellate Prosecutor here on behalf of the people. In effective assistance to counsel, we start with a presumption of counsel's competency. Hindsight and evaluation of what counsel should or shouldn't have done is not done at the appellate level. This Court is aware that there's a two-pronged test that is involved in the stricken person of Washington. Number one, was counsel's representation of the defendant deficient under the Sixth Amendment standards set forth for counsel? And number two, was the defendant prejudiced if, in fact, counsel's representation was deficient? These two-pronged tests both have to be met by the defendant in order to raise a successful claim of ineffective assistance to counsel. Now, with respect to the argument that counsel should have objected to the testimony by Tylone Edwards with regards to the house being shot up, it's important to look at the factual context of that evidence being offered. When Mr. Edwards was initially interviewed by the investigating officers at the hospital, he was not a cooperative victim. He didn't want to identify who did this to him. He just wasn't really helping out in that respect. He explained to trial that he was afraid to do so because of whatever repercussions might happen to him if he were to cooperate with the police. The prosecutor then said, okay, well, obviously you did cooperate at some point. What happened? And then we go into here what Mr. Edwards, Tylone Edwards, said with regards to the house being shot up. Now, there are a couple of several considerations here that we need to look at with regards to this type of evidence. Other crimes evidence is a very particular type of evidence whose inherent prejudice stems from accusing a particular individual, being the defendant, of committing a crime or doing a bad act, and that the reason for doing so is to paint this particular person here, the defendant, as a bad person worthy of condemnation by the jury or disbelief or however you wish to characterize it. It is not the introduction of other crimes evidence is not an absolute bar to the introduction of that evidence if it's being used for a reason other than to show that the defendant has a propensity for crime or is a bad individual. But I think that before you even ask yourselves whether or not this is being offered for what purpose, one has to also decide whether it is, in fact, other crimes evidence that's being offered. If you look at the cases that discuss other crimes evidence, in some of the cases that the defendant cites in his brief, those offenses are introduced by the state as specific particular acts attributed to the defendant himself. Now, in this case, what had happened, this is the Tylenol having had words with the defendant earlier in the evening, went back on his own after his friend, Mr. Jefferson, went back home by himself or left the scene, apparently to confront the defendant. When he got there, there was a whole group of people, a hostile group of people. It wasn't just the defendant, but a number of individuals, and then things progressed from that point in a not such a good way, which ultimately resulted in Tylenol being shot. Nobody actually ever accused the defendant of doing this. Now, Tylenol said they shot my house off. There was no investigation about who they was. They could have been anybody, because we had really a whole kind of group of people here sort of involved. Now, the importance of that, I think, is that this was not being sort of ties into an aspect of the other crimes evidence consideration. The purpose of the admission of this was not to show that anyone in particular was a bad person, be it a defendant or someone else, but it was to show why Mr. Tylenol had decided to cooperate. In other words, to explain the inexplicable. Why would an individual who's not trusting the police and not cooperating have a 180-degree turnaround and start to cooperate? So I think that when you look at one further consideration, when you look at all these three things together, you'll find that there was neither prong of the Strickland test that applied here, because the state did not dwell on this particular aspect of the testimony. It introduced it quickly, strictly to show why Tylenol decided to cooperate. It was referenced in that same context briefly in the state's closing argument. So the fact that it's not really even other crimes evidence, as we understand that in Illinois law, that if you want to make that attribution of that as other crimes evidence, it was not being used to prove that the defendant was a bad guy, and the fact that it was not part of the state's case in any significant material way, other than to show why Tylenol decided to cooperate, I think that certainly you don't meet the prejudice prong in the Strickland test, but I do think that even counsel could recognize that this doesn't really qualify or constitute the type of evidence that needs to be objected to. Now, there's two arguments the defendant makes that are really closely related, and I agree partly with what the defendant says. Theodore Jefferson testified that he got a phone call from Tylenol, and he was telling me that he had been shot, wanted to get a hold of his mother, Tylenol's mother, and he identified the defendant as the shooter. Tylenol had testified earlier that he had been shot when he was being rushed to the hospital. He agreed that he had told Mr. Jefferson that the defendant was shot. The defendant characterizes these respectively as hearsay and prior consistent statement, prior consistent statement being essentially the species of hearsay. While that, in a vacuum, is obviously inadmissible evidence, it can be admissible in either of both instances if it falls under a recognized exception to the hearsay rule. In this case, counsel could easily recognize that this would qualify as an excited utterance. There are three aspects to excited utterances that have to be established in order to allow their admission. One, that there was an event sufficiently startling to produce a spontaneous and unreflective statement. Number two, an absence of time to fabricate. And number three, the statement relates to circumstances of the occurrence itself. All three of these things are easily met in this case. Tylenol had been shot, and this is from his testimony. He believed he had been shot at a Jim Taylor. He was bleeding profusely. He had, in a panic, gotten a girlfriend or someone of a relative of his to take him to the hospital. He testified that he was going into shock. It's obviously a very frightening circumstance for Tylenol meddlers. Certainly, I would say being shot and you're bleeding such that blood is pooling in your shoes is a sufficiently startling event to produce a spontaneous and unreflective statement. And there's no time to fabricate because, as I argue actually with respect to the claim of the prior consistent statement, the startling event is still ongoing. This wasn't even really something that happened long after the fact. The defendant cited some cases in his brief, but you'll see that those cases deal with situations where an individual is being Q&A'd and there's been a time lapse. And so the extended discussion about what had happened after the startling event had occurred diminishes the reliability of the cited utterance. And that's really what this is, is a reliability determination. Here, he's still bleeding out when he's making these statements to Jefferson on the telephone. So, now, these are not problems in the absence of time to fabricate. It's still going on in the startling event. And it certainly relates to the circumstances of the occurrence. So those three things all together, I think, amply demonstrate that if counsel had decided to object, the statement would have been easily able to counter the fact that it was admissible. It's an excited utterance, and certainly a competent counsel could see that, quite obviously, and not feel the need to try to combat that, knowing that the statement would inevitably be allowed to have that introduced. Finally, with respect to the statement against the penal interest by the prosecutor's closing argument, we need to be careful when we start speaking about a prosecutor vouching for a witness. That is legally contexted with arguments where a prosecutor puts the weight of the office of the state's attorney behind the credibility of a particular witness or victim. In this instance, what the prosecutor had done is said, Look, you should believe Ty Lone, because Ty Lone is coming into this with unclean hands himself. He admits he's kind of a dirtball, and that he was picking a fight, and he's getting himself in this bad situation, and yet he's still coming here freely and admitting to you, despite his warts and all, that this is what happened to him. And this is the type of argument that prosecutors in any attorney's make on a routine basis, that my guy is putting himself out there for you to believe, and he's believable, because he knows that you're going to look at him thinking you're a dirtball, but you're a believable dirtball. And that's perfectly fine. Now, it's not a statement against penal interest. I agree. But penal interest is just a name. If the argument itself is fine, whether you call it a statement against penal interest, whether you call it gluba-duba, it doesn't matter. It's still proper argument for the jury. I think that's where this court has to focus when it analyzes whether or not the defendant suffered an unfair prejudice in this case. The defendant did not suffer unfair prejudice. The prosecutor's argument is perfectly valid. Hopefully now, after reading the briefs, you'll know it's not a statement against penal interest. But that is just a word that was used. And the argument, I'll just wrap this up right here. The fact that he gave it a legal term is just something that I think counsel and I will disagree whether it's going to go over the heads of the jury or not. It does nothing more than relate to the substance of the argument itself, which is perfectly valid. So I don't think that you can say that the prosecutor's misunderstanding of a particular definition of a hearsay rule is enough if the argument itself is perfectly permissible. Does the court have any questions? Thank you very much, Your Honor. I appreciate it. Thank you. Counsel? First off, Your Honor, regarding the excited utterance exception that Mr. Daley argues applies to two of the issues relating to the prior consistence statement and the hearsay statement, there are several factors to consider in determining whether the excited utterance exception applies and whether counsel's objection would have been unsuccessful here. However, in this case, looking at the broader context of the events, the excited utterance exception does not apply because there was a break in the spontaneity from the time of the shooting to the time the statement was made that gave Tyrone time to reflect and then falsely accuse Mr. Edwards. The facts leading up to Tyrone's statement was that after he was shot, he walked to his car, and as he approached the car, he had a conversation where he was approached by his brother's girlfriend, Miss Michelle, and Miss Michelle then offered to drive Tyrone to the hospital. Now, there was a conversation there with Tyrone and Miss Michelle regarding the shooting where Miss Michelle and Tyrone had a discussion about where he was shot on his body. So there was a discussion about the shooting with Miss Michelle. So then Miss Michelle drives Tyrone to the hospital, and on the way to the hospital, Tyrone calls his friend Jefferson, and they have a conversation. And Tyrone then finally makes the statement that Mr. Edwards, my client, shot him in response to Jefferson's question. So Jefferson asked during the course of this conversation with Tyrone, who shot you? So then Tyrone answered. So that was the alleged excited utterance in response to a question. So all these intervening events, this conversation with Miss Michelle, the driving to the hospital, time to reflect, conversation with Mr. Jefferson, and then finally making the statement in response to Jefferson's question, breaks the spontaneity that disqualifies this as an excited utterance. Now, the important point here is that there was time to reflect and falsely accuse Mr. Edwards. So the question is why would Tyrone then falsely accuse Mr. Edwards? Well, there is evidence that the two of them had a feud, a rivalry. Tyrone testified that they had a feud regarding a girl. Then there's evidence that they had an argument outside the party. So there was evidence that Tyrone would falsely accuse or had a vendetta against Mr. Edwards. So this does not qualify as an excited utterance. Regarding the prejudice from the house shooting or even the question of whether the house shooting qualifies as an other crime or bad act, because Tyrone used the word they in identifying the shooters rather than specifically mentioning Mr. Edwards, there's no question that considering the context of the question and Tyrone's testimony that Mr. Edwards was meant to be included as the they, as one of the they, at least, who shot up the house. There was no way else for the jury to interpret that. And regarding the prejudice from that testimony, again, it propensity. It shows that Mr. Mr. Edwards, it was a propensity to violent crime with a firearm. And it also goes through the state's case that Mr. Edwards had a few, was angry with Mr. Tyrone and then probably shot him. So that evidence about the house shooting was extremely prejudicial to Mr. to Mr. Edwards. Regarding the misstatements of the law and closing argument by the prosecutor, again, Mr. The prosecutor does have a special relationship to special relation to the jury. And here he is presenting a legal term to validate to Mr. To validate Tyrone's testimony. And the important part is maybe perhaps maybe just the one incident that would not be that significantly prejudicial. But again, this is the third instance of the prosecutor eliciting or presenting or arguing that that is used to. Enhance vouch for the credibility of their main witness Tyrone with the state's case rested on Tyrone. So when considering the prejudice, one has to, you know, one has to consider that Tyrone is the most crucial witness for the state. And the three of these four instances of ineffective counsel pertain to the enhancement of Tyrone's credibility. Are there any other questions, Your Honor? Thank you. Appreciate the briefs and arguments. Counsel will take the case under advisement. There will be no further arguments scheduled before the court will adjourn. All rise.